CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 11 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| BOBBY R. ABERNETHY,<br>        *Plaintiff,*<br>v.<br><br>PATRICK DONAHOE, POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE,<br>        *Defendant.* | No. 5:11–cv–30077<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Patrick Donahoe ("Defendant"), Postmaster General of the United States Postal Service ("Postal Service"), moves to dismiss this breach of contract action on remand from the Fourth Circuit. In the alternative, Defendant moves for summary judgment. No hearing has been scheduled on Defendant's motion. For the following reasons, I will grant Defendant's motion for summary judgment.

I. BACKGROUND

  Bobby Abernethy ("Plaintiff") filed his complaint in December 2011, alleging that the Postal Service breached a "pay contract" with him. Specifically, Plaintiff alleges that the Postal Service did not pay him a salary mirroring the maximum figure on the Postal Career Executive Service (PCES) pay scale from 2006-2011. Plaintiff claims that this constituted a breach of a pay contract that provided him with indefinite "saved grade" and "saved pay" status as an employee with the Postal Service.

  Plaintiff worked for the Postal Service from 1966 until he voluntarily retired in 2011. As part of a larger reorganization effort within the Postal Service, in March 1993, Plaintiff was reassigned from his position as a PCES Manager/Postmaster, based in Clarksburg, WV, to the

lower-level position of Manager within the Executive Administrative Schedule (EAS), based in Richmond, VA.

Plaintiff was granted indefinite "saved grade" and "saved pay" status as a result of those reorganization efforts and his assignment to a lower-level position. The parties agree that "saved grade" and "saved pay" status allows an employee to keep his or her previous salary if assigned to a lower-level position that would otherwise pay a smaller salary.[1] However, Defendant states that reassigned employees with Saved Grade Status "are not entitled to raises they might have received if they had remained in their previous positions." Hutcheson Decl. ¶ 4. Instead, they are only entitled to the raises associated with their new position, "if and when the salary for their new position rises above their Saved Grade Status pay." *Id.* Plaintiff, on the other hand, alleges that he was entitled to the same raises as an EAS manager that he would have received in his previous PCES position, and brings this action to recover the difference between his salary as an EAS manager and the maximum salary on the PCES pay scale for the years 2006-2011, as well as other bonuses and retirement pay based on that scale.

In my previous decision, I granted Defendant's motion to dismiss Plaintiff's breach of contract action "based on the simple fact that . . . a federal statute provides that, with narrow exceptions that are not applicable here, USPS employees serve by appointment, and not by contract." Mem. Op. at 4 (June 7, 2012). The Fourth Circuit vacated that opinion, noting that "[Plaintiff] alleged the existence and breach of a contract governing his compensation, rather than a contract governing his employment duration." *Abernethy v. Donahoe*, 491 F. App'x 388,

---

[1] According to Plaintiff's exhibit, "saved pay" means that an employee's pay is unchanged even though the employee has been placed in a position with a lower rate of pay. "Saved grade" means that an employee's grade is unchanged even though the employee has been placed in a position with a lower grade. An employee's "saved grade" is the basis for all personnel actions affecting that employee, including merit evaluations, pay increases, promotion opportunities, establishment of retention schedules, etc. *See* Docket Nos. 10-1 at 2, 42-4. Defendant refers to indefinite "saved grade" and "saved pay" status collectively as "Saved Grade Status." *See* Declaration of Norma B. Hutcheson ¶ 3 (Docket No. 39-1).

389 (4th Cir. 2012). As a result, the court concluded, "[i]t does not necessarily follow that because [Plaintiff] could have been terminated at any time, the Defendant also had the right to alter his compensation if, as [Plaintiff] alleges, there was a valid contract on that point." *Id.*

Defendant now moves for dismissal, or in the alternative, summary judgment, on four grounds: (1) Plaintiff's breach of contract claim fails for lack of subject matter jurisdiction; (2) Plaintiff fails to state a claim for breach of contract because he served by appointment; (3) Plaintiff fails to plead sufficient facts to establish the elements of a breach of contract claim; and (4) Plaintiff's claim is barred by the statute of limitations.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

#### 1. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court considering a motion to dismiss pursuant to Rule 12(b)(1) must accept as true all material factual allegations in the complaint, and must construe the complaint in favor of the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, when considering a challenge to the factual basis for subject matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).

Whether a court retains subject matter jurisdiction over an action is an issue that can be raised at any time. *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007). Even when other issues are raised, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d

435, 442 n.4 (4th Cir. 1999) (citation omitted). If at any time a court determines that it is without subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### 2. Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In particular, a pro se complaint must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation omitted).

### B. Motion for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence of a genuine issue of material fact

"is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50.

When considering a motion for summary judgment, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The party seeking summary judgment bears the burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. If the moving party sufficiently supports its motion for summary judgment, the burden shifts to the non-moving party to set forth specific facts illustrating genuine issues for trial. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citation omitted). On those issues for which the non-moving party has the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in the rule. Fed. R. Civ. P. 56(c); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993).

The court's role is to determine whether there is a genuine issue based upon the facts, and "not . . . weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. However, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). At the summary judgment stage, the nonmoving party must come forward with more than "'mere speculation or the building of one inference upon another'" to resist dismissal of the action. *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)); *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported

speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

A grant of summary judgment is reviewed de novo, drawing reasonable inferences in the light most favorable to the nonmoving party. *Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012). The reviewing court will uphold the district court's grant of summary judgment unless it finds that a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174-75 (4th Cir. 2009).

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1. Subject Matter Jurisdiction

Defendant begins its memorandum by contending that the Contract Disputes Act ("CDA") precludes this Court from hearing contract actions against the Postal Service. In general terms, the CDA applies to any "express or implied contract" entered into by an executive agency of the federal government for the procurement of property, services, or construction. 41 U.S.C. § 7102(a). *See also United Federal Leasing, Inc. v. U.S.*, 33 F. App'x 672, 674 (4th Cir. 2002) ("The CDA provides for legal recourse against the government for disputes arising from the procurement of property and services by the federal government."). District courts do not have subject matter jurisdiction over claims falling within the scope of the CDA, and a CDA claimant may seek relief only through appeals to the appropriate agency or by filing suit in the Court of Federal Claims. *See* 41 U.S.C. § 7104(b)(1).

Because the parties agree that Plaintiff was an employee of the Postal Service, rather than a contractor providing services, the CDA does not apply. In *United States v. J & E Salvage Co.*, 55 F.3d 985 (4th Cir. 1995), which Defendant cites, the Fourth Circuit considered an action by

the government against a contractor to recover property that was mistakenly transferred in a contract for sale. *Id.* at 987. Describing the CDA as "a comprehensive statutory scheme for resolving contractual conflicts between the United States and government contractors," the court held that the government could not circumvent the procedures of the CDA by recasting its contract claims in tort language. *Id.* at 987-88. *See also United Kingdom Ministry of Defence v. Trimble Navigation Ltd.*, 422 F.3d 165 (4th Cir. 2005) ("There is no language in section 605 [of the CDA, now section 7103] explaining how claims by someone other than the Government or a contractor can be processed under the CDA."). *Id.* at 169.[2] Again, in this case, there is no allegation that Plaintiff was ever a contractor during the course of his nearly five decades of employment with the Postal Service.

The D.C. district court illustrated this distinction in *Peter B. v. U.S.*, 579 F. Supp. 2d 78 (D.D.C. 2008), in which a former CIA agent sued the government under the Federal Tort Claims Act (FTCA). The district court dismissed his case, holding that as a former CIA employee, plaintiff was precluded by the Civil Service Reform Act (CSRA) from bringing his claims. *Id.* The court noted that if Plaintiff was a contractor, rather than an employee, because "[plaintiff's] claim is essentially contractual in nature," his action would likely need to be brought under the CDA. *Id.* at 83 n.5. While the court noted that plaintiff's claims would be dismissed regardless of whether he was an employee or a contractor, that distinction could determine whether the court had jurisdiction to hear his case. *Id.* at 83.[3]

---

[2] On January 4, 2011, Congress recodified the CDA, such that the provisions formerly listed in the U.S. Code at 41 U.S.C. §§ 601-613 are now listed at 41 U.S.C. §§ 7101-7109. *See* Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26.

[3] Defendant also quotes the Third Circuit's discussion of the CDA in *Anselma Crossing, L.P. v. U.S. Postal Serv.*, 637 F.3d 238 (3d Cir. 2011), to support its motion to dismiss on subject matter jurisdiction grounds. *See id.* at 246. However, *Anselma Crossing* featured a real estate developer plaintiff alleging that the Postal Service breached an oral contract to lease a post office building that plaintiff was planning to construct. *Id.* at 239. Thus, the dispute in *Anselma Crossing* was covered by 41 U.S.C. § 7102(a), which states that the CDA applies to any express or implied

Ultimately, the case that Defendant cites in support of its Rule 12(b)(6) argument for dismissal, *O'Neal v. Donahoe*, 802 F. Supp. 2d 709 (E.D. Va. 2011), makes it clear that a court has subject matter jurisdiction to hear a breach of contract claim brought by a former employee against the Postal Service in this circuit under the Postal Reorganization Act, 39 U.S.C. § 409(a), which provides that "the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." *Id.* at 712-13. *See also Graham v. Frank*, 884 F.2d 1388, 1989 WL 100668, at *2 (4th Cir. 1989) (unpublished per curiam table decision) (affirming that the district court had subject matter jurisdiction pursuant to 39 U.S.C. § 409(a) over an employee's claim that the Postal Service breached his contract for employment).

2. Failure to State a Claim

Defendant also contends that Plaintiff fails to state a claim for breach of contract because, as a Postal Service employee, he served by appointment rather than employment contract. As in its first motion to dismiss, Defendant quotes *O'Neal v. Donahoe*, 802 F. Supp. 2d 709 (E.D. Va. 2011), in support of a straightforward application of 39 U.S.C. § 1001(a):

> Because [39 U.S.C. § 1001] specifies that Postal employees are appointed and not employed by contract, Plaintiff's claim that the Postal Service breached his employment contract is necessarily without merit. This conclusion is consistent with several prior decisions holding that there is no employment contract that can form the basis for a Postal employee's breach of contract action against the Postal Service.

*Id.* at 714. Defendant contends that Plaintiff's allegation that the Postal Service breached a "pay contract," as opposed to a contract governing his employment duration, does not alter the Eastern

---

contract entered into by an executive agency for the procurement of property, services, construction, repair, or the disposal of personal property. *Id.* at 240. As discussed above, Plaintiff in this case is a former Postal Service employee, not a government contractor. The Third Circuit's discussion does not apply to this case, and Plaintiff's claims do not fall under the CDA.

District's analysis, as the Postal Service never entered into any type of contract with Plaintiff—pay or employment—for the specific reason that he served by appointment.

Plaintiff disputes this point. While agreeing that Postal Service employees are appointed to positions, according to Plaintiff, "[t]here are at least 6 different pay contracts that I can think of that cover pay for the majority of Postal employees." Plaintiff asserts that his "pay contract providing [him] with Saved Grade/Saved Salary was agreed to months before [he] was appointed to the lower level Manager position." Pl.'s Second Resp. to D.'s Mot. to Dismiss 3.

Plaintiff has not submitted any document that resembles a separate "pay contract," which, again, Defendant contends does not exist. However, in his complaint, Plaintiff not only alleges the existence of a "pay contract," but also describes the alleged breach of obligation in this case: "Instead of being paid in the PCES schedule as the Postal Service has promised and defined in their saved grade/saved pay regulations, they have paid me in the lower EAS position I was placed in." Compl. ¶ 3. Plaintiff also details the difference in salary that he is allegedly owed as damages in this case. *Id.* As a result, I find that this case is best resolved under the legal standard for summary judgment.

### B. Motion for Summary Judgment

Plaintiff's complaint can be dismissed as a matter of law. Again, Plaintiff contends that, despite his position as an EAS manager, he was owed the maximum salary on the PCES scale between 2006-2011 due to his status as a Saved Grade employee. However, Norma Hutcheson, the Deputy Managing Counsel in the Postal Service's Capital Metro Law Office, states in unequivocal terms that, "[w]hile employees with Saved Grade Status do not see a decrease in pay [upon reassignment], they are not entitled to future raises they might have received if they had remained in their previous positions." Hutcheson Decl. ¶ 4. None of the exhibits that Plaintiff

submitted contradicts Ms. Hutcheson's assertion, such that they create a genuine dispute of material fact.[4]

In support of his breach of contract claim, Plaintiff has submitted, among other documents, a page from the Postal Service Employee Labor Relations handbook defining the terms "saved grade" and "saved salary" (Docket No. 10-1 at 1), a joint statement from the president of the National Association of Postal Supervisors defining "saved grade" and "saved pay" (Docket Nos. 10-1 at 2, 42-4), and a photocopied declaration from the Postal Service's Vice President for Labor Relations that describes, in part, the effect of "saved grade" and "saved pay" status for employees affected by the Postal Service's restructuring efforts (Docket Nos. 10-1 at 4, 42-5). According to Plaintiff, these three documents declare, "[i]n simple terms, I was promised my PCES salary and benefits no matter what job I was assigned to indefinitely." Pl.'s First Resp. to D.'s Mot. to Dismiss 2.

The Postal Service's Employee handbook and the statement issued by the president of the National Association of Postal Supervisors both state that an employee assigned to a lower grade is treated as being in the higher grade for pay increases and benefit purposes during the saved grade period. *See* Docket Nos. 10-1 at 1-2, 42-4. *See also supra* note 1. Attachment 1 to Plaintiff's April 3, 2013 response similarly defines "Saved Grade" to mean that an employee will "continue to be paid at the grade you formerly held . . . supplemented by general increases and premium pay . . . ." *See* Docket No. 42-1. The declaration from Mr. Mahon Jr. also states that the "saved grade is that employee's grade for every purpose including compensation," and

---

[4] "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986)). A motion for summary judgment can be defeated only if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505.

"PCES executives who were placed in EAS positions will continue to receive their PCES benefits indefinitely." *See* Docket Nos. 10-1 at 4-5, 42-5.

Defendant confirmed that Plaintiff received "indefinite saved grade and pay status" upon his reassignment, which Defendant refers to collectively as "Saved Grade Status." Defendant also confirmed that employees with Saved Grade Status do not see a decrease in pay upon reassignment, and are entitled to receive future raises if and when the salary for their new positions rises above their Saved Grade Status pay. Hutcheson Decl. ¶ 4. Plaintiff's salary was not reduced following his reassignment from the PCES position to EAS manager, and Plaintiff detailed the "general increases" he received between 2006-2011 as an EAS manager in his complaint. *See* Compl. ¶ 3.[5]

Plaintiff also attached a Notification of Personnel Action to his second response to Defendant's motion, *see* Docket No. 42-6, which confirms that Plaintiff was guaranteed Saved Grade/Saved Salary status, and that he would receive his PCES benefits for an indefinite period. In apparent reference to that Notification, Plaintiff asserts that "[t]he Postal Service paid me in the lower EAS pay schedule for the lower position instead of the Saved Grade salary of the former PCES-1 position as they agreed to in the contract." Pl.'s Second Resp. to D.'s Mot. to Dismiss 4.

Plaintiff is apparently construing these documents, and in particular that Notification of Personnel Action, as the separate "pay contract" that the Postal Service breached in this case. In reality, however, Plaintiff has not submitted any sort of separate enforceable contract—pay, employment, or otherwise. Nor do these documents indicate that Plaintiff was owed the maximum figure on the PCES salary scale for the years 2006-2011, or contradict Ms.

---

[5] While Plaintiff did not include any pay details from 1993-2006, he presumably received general salary increases during those years as well.

11

Hutcheson's assertion that employees with Saved Grade Status are not entitled to the exact same raises they might have received had they remained in their previous position.

Congress has provided a method for aggrieved Postal Service employees seeking to remedy the type of employment grievance in this case. *See O'Neal*, 802 F. Supp. 2d at 715; 5 U.S.C. § 7512(3), (4). In fact, Plaintiff utilized those administrative procedures by filing two previous actions regarding his pay with the Merit Systems Protection Board ("MSPB"), in August 2003 and February 2004, in which he claimed that a June 2003 pay adjustment for his EAS job was effectively a demotion from his previous PCES pay level. *See* Docket No. 39-5. Both claims, along with the seven other administrative complaints Plaintiff filed between 2003 and 2010, were either dismissed or withdrawn. *See* Hutcheson Decl. ¶ 9-10. Plaintiff now states that he waited until after his retirement in 2011 to file this action, "because [he] did not want to deal with MSPB again." Pl.'s First Resp. to D.'s Mot. to Dismiss 4. However, as in *O'Neal*, Plaintiff here may not "circumvent the outcome of those [administrative] proceedings by recasting his employment grievance as a breach of contract claim." *O'Neal*, 802 F. Supp. 2d at 716.[6]

At bottom, while Plaintiff alleges that the Postal Service breached a "pay contract," rather than an "employment contract," the Eastern District's discussion in *O'Neal* remains applicable to

---

[6] For this reason, Plaintiff's claim could be dismissed as untimely. Under Virginia law, the statute of limitations for contract claims is five years for contracts in writing, and three years for oral contracts. Va. Code Ann. § 8.01-46. The period runs from the date of breach, and not the date that the resulting damage is discovered. *Id.* § 8.01-230. In response, Plaintiff cites the "continuing claim" doctrine, which federal claims courts have applied "when the government owes a continuing duty to the plaintiffs . . . [such that] each time the government breaches the duty, a new cause of action arises." *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000). However, "the 'continuing claim' doctrine does not apply when Congress has 'deliberately given an administrative body the function of deciding all or part of the claimant's entitlement.'" *Carrington Gardens Assocs. v. U.S.*, 49 F. App'x 427, 431 (4th Cir. 2002) (quoting *Friedman v. United States*, 159 Ct. Cl. 1, 310 F.2d 381, 385 (1962)). Again, this is an action brought under 39 U.S.C. § 409(a), properly in federal district court, and Virginia's statute of limitations applies. But even if Plaintiff had brought this action in federal claims court it would still be untimely, given that under the "first competent board rule," the six-year limitation period of 28 U.S.C. § 2401(a) would have been triggered by the MSPB's consideration of Plaintiff's 2003 and/or 2004 claims. *See Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005) (citing *Friedman*, 159 Ct. Cl. 1, 310 F.2d at 389) ("[N]o cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act.").

this case. Defendant asserts that no separate "pay contract" exists in this case, and Plaintiff has not produced any specific evidence to the contrary. Crucially, nor has Plaintiff provided evidence contradicting Ms. Hutcheson's declaration, or shown that the MSPB rulings regarding his pay level were incorrect. I find that there was no separate pay contract between Plaintiff and the Postal Service, let alone a contract that was breached, and Plaintiff's complaint can be dismissed as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion to Plaintiff and all counsel of record.

Entered this 11th day of June, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE